The next case today, number 221941, Glendy Marleny Lopez Cano v. Pamela Bondi. Will counsel for petitioner please come up and introduce yourself on the record to begin. Good morning, your honors. Robert Warren for the petitioner, Glendy Marleny Lopez Cano. I'll reserve two minutes for rebuttal. Okay, you may, and you may proceed. Yes, I appreciate the court's indulgence today, and we had heard the previous argument regarding a similar issue on hardship and deference. I would state from the outset that, in light of Loper's right, this court should not give total deference to the administrative decision. So I want to start with that. And in this case- When you say administrative decision, you mean rulings from the BIA? Correct. Okay. And in this case, going all the way back to the IJ, the IJ and then the board in succeeding that did not- Loper stands for the proposition that we shouldn't give deference to the administrative agency's interpretation. Correct. So how does that play into what we're doing here? What we're doing here is- This is a decision rather than- This is fact finding. This is- Well, it was an interpretation, application of racinus primarily, the five factors of racinus to the facts of this case. We believe the IJ did not properly assess the five factors in our case. In the racinus case, we have a situation, there are three U.S. citizen children from Glendale-Lopez Cano who know no other way of life apart from their life in the United States. They don't know the life in Guatemala. Again, their Spanish is limited. They don't speak Spanish the way folks would speak in Guatemala. Should we- Children, go ahead. Should we assume that they would return with their mother? No, the decision in the application is that they would stay in the United States. And that goes to one of the other factors of racinus, is there was no support system in the United States. The father, the evidence will show, was not involved in their life. The mother was the sole, single caretaker for these children. If she was to go to Guatemala, she'd have no way of supporting the children, in this case, from Guatemala. There was no evidence that she'd be able to have substantial earnings there. The IJ didn't make their findings regarding that. The BIA didn't make findings regarding that. So they ignored that factor totally. Also, the mother also has no short-term or long-term prospects of returning to the United States to be with the children. So you have a situation of basically a mother separating from the children. I also, in my brief, drew attention to the Salcido-Salcido case for Zionists, which stated that family separation can sometimes be the single most important factor in determining exceptional, extremely unusual hardship. And no mention was made of the separation of mother from the children. Also, the economic hardship that the children would face by the mother's separation was ignored by the IJ, ignored by the BIA. And we feel that that's a legal question. And I think the case is right to show, the evidence showed the factors, the health system in Guatemala is very poor. We inserted evidence from both the CDC and other agencies regarding health conditions and access to health conditions in Guatemala. This is why the mother and children made the decision they would stay, but because of the woeful conditions in Guatemala. And the mother had been working here for 24 years. She came here in the year 2000. And to be sent back now, she's now 46. There's no evidence she'd be able to get a job to help support her children in the United States. We have no father here who's participating. Counselor, there is one of the complications in these cases. There seems to be a, Guatemala is a very troubled place. It's got all sorts of problems with gangs, with economic hardship, with lack of medical care, so that any child who has to leave the United States and go to Guatemala, almost inevitably, is going to suffer because of that. And yet, we are told that just because of those sort of hardships, that's a given. Any time, there's a separation that requires the children to go to Guatemala. And because that's a given, it doesn't meet the exceptional and extremely unusual circumstance. So how do we get around that? Understandably, you talk about what a terrible place it would be in your review. But that's going to be true for any child who has to go there. So why don't we do that? Thank you, Your Honor. Both Brasinas and Monreal say that this is not reserved for just a tiny, small group of eligible applicants for cancellation removal. Because if we take to the extreme your position, that means no one would ever be eligible for that. Because it would say everyone would also always suffer that hardship. But that's only one factor of many. It's not the only factor, Your Honor. So we're saying the evidence, the facts did show more factors than just the economic hardship. It's one of many, including the gang warfare, which there was an accompanying withholding removal application, where Ms. Lopez-Connell described her issues. Yes? I.J. weighed those factors. But let me also point out, I guess, the negative factors. But there was an issue about her credibility and corroboration. She admitted upon further questioning from the I.J. that she had bought an identity card that was fraudulent. Then she kind of said, well, it wasn't because of my name, but it was fraudulent. And then there was lack of corroboration, where she has been living in the United States. Her testimony was not detailed. So it's clear here the I.J. is weighing the positives that you talk about, but also the negatives. How can we go into that? Well, the I.J. didn't make a discretionary finding. She just stated there's no exceptionally extremely unusual hardship. She did not make a negative credibility finding. She actually states, I'm not impelled to make an adverse credibility. She mentioned the factors you mentioned, Your Honor. But she did not make a finding of no lack of good moral character in this. It was just a statement in her decision. And I believe that we can look at all the factors, not just that factor. And I think that they didn't properly evaluate each of the children's performance, what they would suffer. Now, the two younger children. Yeah, but what I'm saying is she's, maybe she doesn't make the adverse finding, but she's weighing all the negatives. She's weighing all the positives. I don't have to say she, the I.J. weighs everything. And then makes the determination. But the I.J. is considering everything. Your Honor, the board only focused on one issue, was the exceptional and extremely unusual hardship. They didn't even address those negative findings in their determination of upholding the judge. They just said she didn't make this finding. They didn't reach the issue which was raised of proof of the continuous presence. Even though the record was complete, even the I.J., even though on one hand she said there was not corroborating evidence, she listed all the evidence that the petitioner in this case has submitted. And I believe that that should be seen as a reasonably basis for remanding at least to make a proper determination of the evidence submitted, which the judge did not do. In addition, there's an issue of, in the government's brief, they mentioned that their older child is now over 21. Now, there's two, still two children under 21. One is 18, now 116. But this case has been going on since 2016, and the decision was 2018. So the passage of time should not negatively impact determination on any of the children. The government, I think, incorrectly describes the 18-year-old as an adult, which under the statute, 18 is still a qualifying age. And it should not be frozen. The age of the children at the time of the application should be looked at here. And there's a number of cases that support that. And I believe that the Mon-Royal standard, even though Mon-Royal came out negatively against the petitioner or the applicant, the Mon-Royal says it does not have to be unconscionable. It's not a standard that it has to be unconscionable for the separation of this parent from this child. That the standard is somewhat less than that. And we believe that the age of the children, the health of the children, although it may be fine here, if they were to go to Guatemala, if it's an adequate health care system, they would suffer. The circumstances of the children, who are totally dependent on the mother here in the United States, in Massachusetts, would be severely impacted. The education they're getting here would be impacted by the education system in Guatemala. Are you suggesting, I mean, I understand from your point of view, and this was true for the petitioner in the previous case, if you can identify a legal error in what the administrative agency did, then you're on more solid ground. Perhaps we identify one kind of legal error before, being a failure of the administrative agency to engage with, just not even talk about, critical evidence was put before it. We have precedents where in that circumstance, we'll send it back and say, look, this was critical evidence, you didn't talk about it, but you've got to talk about it. But you seem to be talking about a different legal error here, which is that they got the legal standard wrong. Is that what you're saying, that the agency did not understand the legal standard as set forth in the Monreal case, for example? Yeah, they had not accurately, properly evaluated that. In that sense, it would be, you could say, an abuse of discretion. That they didn't look at the factors and did not come to the proper result, because those factors were met for Racinus and Monreal. I don't know if that answers your question. No, I thought you were saying that they failed to understand. I mean, Monreal identifies a bunch of factors, not exclusive, but a bunch of factors that have to be considered. I thought you were saying that the administrative agency, even though there was evidence in the record, just didn't understand what the standard was. Are you saying that, did not understand what the correct legal standard is? Well, based on their opinion, it's not clear that they properly applied it. I can't go into their minds and see if they correctly understood it. But the way they articulated it, they didn't get it right. I thought that's what you were saying. But that is true, Your Honor, they didn't get it right. But are you saying they improperly applied it because they reached a factual determination that you disagree with? Well, it's not the factual determination, it's the applying the legal. I know it's a very murky thing. That's what I think this court will have to decide, because factual determinations and legal standards overlap. That's what's happening here. But our case law says that they don't have to be totally explicit when giving their reasoning. So if they have that broad language, like in the last case, they said we've looked at everything, and this is how we come down. Then what are we supposed to do with that? Well, it's up to you to see, were they clear in their position? And you don't have to give deference to them. If you as this court has, I believe this court does have that authority to take a look and see if they totally missed the boat on this. Because I think that's the case here. The person that didn't properly evaluate, the IJ definitely didn't do it in the board in just accepting her determination, did not properly look at the evidence in front of her and applying those standards. The evidence was there, they just didn't apply it right. So go through how they misapplied it. They didn't look at the fact that children would be, they definitely didn't give much, if any, interpretation of the fact there would be no caretaker for the children here if mom goes back to Guatemala and the children are left here alone. They did not do that. That's a very significant issue in my opinion. And so on that issue, it seems to me your position is reasonable that we should look to the circumstances at the time the application was filed. But do we, should we thereby also ignore the fact that children, for the most part, are now adults? And that once they become adults, then she's no longer that kind of caretaker because they're presumed to be able to support themselves. But they should not be penalized by the passage of time, your honor. That's our position. And there's cases, the procedural case in the BIA, Martinez-Perez v. Barr from the 9th Circuit and Cruz v. Garland from the 2nd Circuit all address that issue. Look at them at the time of the application, not what it is today. And we have to look at their, what's the children's position at the time when this application is filed and not look at it, at the fact they're adults now. That would be an unlawful penalty to the qualifying relatives. Okay. Thank you, counsel. Thank you. No counsel. Mr. Nelson. Please introduce yourself on the record to begin. Good morning. Erin Nelson for the respondent, the Attorney General. Get the microphone a little closer. Oh, sorry. Thank you. Erin Nelson for the respondent, the Attorney General. At the outset, I want to make explicit that we withdraw our jurisdictional argument that we made in our brief, which was filed before the Wilkinson decision. I think that's clear with our 28-J, but I wanted to put that on the record. I would, I mean, you, sorry, you never submitted another brief. I mean, kind of you, you do a kind of. No, we have an alternative argument. You do. We're certainly willing to stand on today. Yeah. There's not much there. We believe there's, well, I'll say at the outset, I'm happy to file another brief if the court so chooses, but I believe under substantial evidence review, the agency's hardship determination is definitely supported. I would say at the outset that even if everything that Mr. Warren has said about the conditions under which petitioner's children will experience, the overarching question is, does the hardship that will attend, is it substantially beyond that which normally follows the removal of a close relative? And I would say we can get into the facts, but an answer to that question is clearly no, that it does not. I would also say that Mr. Warren asks us to fix the ages of the qualifying relatives in time regarding when the application was submitted. And that's fine, but at the same time, he asks for a remand. And I would submit to the court that if this matter were remanded, I'm not sure on what basis, but if it were remanded, the sole child on whose hardship the entire case anchors would now be 23 years old and is no longer a child under the INA for purposes of cancellation. So I'm not sure that he wants both of those facts to be the case. In answer to the question of our briefs describing the 18-year-old as an adult, it wasn't to say that that child is not an adult under the INA. It's rather in answer to the question of that individual is 18, the older child is 23. We have a presumption in this country that we reach the age of majority. It wasn't meant to be anchored in. So what happens, counsel, if we have a situation where the children were all children, let's say, under the age of 18 at the time the application is filed, maybe at the time that the IJ hears the case, then the case proceeds to the BIA up to us, years go by, as sometimes happened. We find legal error, it's remanded back to the IJ, and lo and behold, all those children are now adults. What happens in that case? Does the IJ say, nope, can't deal with this anymore? Is that what you're saying? I wouldn't want to get ahead of the agency's deliberative process, but to the extent that a counsel for a petitioner would ask for a resubmission of evidence, whether the constrictions of the remand, whether it was on the evidence of record to be renewed, or whether it was wide open, I think would depend. But my strong suspicion is that when those children reach the age of 21, they're no longer qualifying relatives for the petitioner. That would be my suspicion of how that would play out. So the delay would basically kill the attempt to invoke cancellation removal, right? It appears that it would, but if we think about why is there, why does cancellation of removal exist? If we take everything that Mr. Warren says is true, that for example, these young children need a support system, especially a financial support system. In your scenario, your honor, that is sort of militated against and reduced by the passage of time, that they no longer need that support system. As US citizens, we have a kind of normative stance that at age 18, you have to kind of make your own way in life. So- But when removal is canceled, is it canceled forever or is there a procedure to reinstitute deportation? So a successful cancellation application would allow that person to be on the road for legal permanent residence status and eventually naturalized citizenship, barring some disqualifying factors that I wouldn't see on this record. I would say that- So the passage of time does penalize? From the point of view of a qualifying relative, I mean we have cases where children in other contexts age out and are not necessarily, you know, the ballast of the claim weakens with the passage of time. I'm not sure it's a penalization or if it's just a reflection of the circumstances of life passing. You know, the matter of Reseda's case was a case where a single mother had no family or support system in Mexico and she had six children to take care of, four of whom were US citizen children. And on that record, I believe that ages were 3, 5, 7, and 11. And, you know, one can- And that was also deemed a close call. But with those four young children, that's quite a different situation to having teenagers or now aged out qualifying relatives. But with respect to the health issue of the eldest child, we would- I would reiterate and echo my colleague's position earlier that substantial evidence review is the appropriate standard of review here. And under that standard, there is just no evidence to compel a contrary conclusion but that petitioner failed to show that her oldest child would suffer the requisite hardship based on his anxiety issues. I don't want to downplay or diminish his anxiety issues, but she has characterized those anxiety issues as just that, anxiety issues, not anxiety. Anxiety is something that would appear in a DSM-5 that a psychiatrist or a psychologist would make a clinical diagnosis for and on this record, we do not have that. We have her affidavit at 177. We have her testimony in which she clearly anchors her oldest son's anxiety issues in her immigration proceedings. We have a three-sentence statement from the licensed clinical social worker who says, I've just started to see him in psychotherapy. That was submitted just weeks before her individual hearing. We don't have a medical- Again, a medical diagnosis. We don't have medication that is on board. We don't have a treatment plan. We don't have any information about whether, should he return to Guatemala, he could not access the therapist telephonically or whether his condition is so severe that in Guatemala he can't receive the kind of care that he needs. In fact, while Mr. Warren says that the agency here misapplied the Racinus and Monreal factors, what, in fact, he feels like is kind of a burden shifting. Indeed, we have a constellation of factors that have to be applied, not exclusively, and it's not a hard and fast rule. We don't have a rubric. We don't have a checklist that an immigration judge goes down. But fundamentally, and the starting point is that the petitioner has to meet her burden. So on several of the issues that Mr. Warren said the agency failed to appropriately find, one of the factors that he said is that she has no short or long-term prospects of immigrating. But if you reread the record and reread the testimony, that comes from Mr. Warren's closing argument before the immigration judge, and it comes from his pretrial brief that he submitted to the immigration judge. And if you note that it's basically taken almost whole cloth from there onto the opening brief, and there's no citation to the record. It's essentially statements and arguments by counsel that are not tethered to the record. And I'm not going to argue counterfactually, but we don't know whether or not that this is just one slight variable. We don't know if she did not show, she did not prove, she did not submit anything from a government agency that someone in her position has no chance of immigrating, that even if her oldest son at the time was 16 or 17, that in the short or long-term, that he could not file for her. We don't know that because she didn't meet her burden. She failed to show that. Another example. So is it your position that you want us to conclude that the record does not compel a reversal, or that the findings of fact are not clearly erroneous? The record does not compel reversal of the hardship determination, Your Honor. I have other examples of propositions that Mr. Warren presented that are simply not supported by the record. Counsel, can I ask you what you just said? I had asked, I think, earlier. I mean, the element issue seems to be whether, cumulatively looking at all the relevant factors to the hardship standard, do they in the aggregate meet the hardship standard? Are you saying, how are we supposed to review that ultimate question? Are you saying that we would have to conclude that the record would compel a contrary result, namely that, in our view, all those factors in the aggregate do meet the hardship standard? Is that? Can we do that? Should we do that? That's essentially our position, that you would have to say that the evidence in the aggregate compels a contrary conclusion. But underneath that, I would submit that there would have to have been a fundamental precept by the petitioner, a factual precept or a condition that was just ignored by the immigration judge. And that is where the court has kind of a stopgap measure. If, for example, our eldest child here had a heart condition and the immigration judge didn't discuss the heart condition and said, in the aggregate, we believe that the hardship standard has not been met, then essentially, that would not be a question of a weight of the evidence. That would lend itself toward a legal error. And something like that would be where this court could send back for legal error on that issue. But following Patel and Wilkinson So when the court says, I've taken a look at all the evidence and then just simply says it doesn't meet the hardship standard, you're saying that if there's something so compelling in the evidence that should have been discussed that contradicts that ultimate determination, that that would be a basis to send it back? It seems like a situation like that. I don't want to argue against myself, but I also want to be candid in that as long as the court is not getting into a weight argument, I would have done this differently, I would have seen this differently or that differently. If we have something egregious that is missed by the agency, it does suggest that that would rise to the level of legal error and the court in such a situation could send it back for further fact finding on that particular issue. Because that would be a legal issue. Well, it seems to me you and your colleagues are really saying that the only basis for us to send it back would be to find a legal error in a very traditional way. Getting the applicable legal standard just flat out wrong, not understanding it, or failing to engage at all with some critical evidence that was in the record. But short of that, you seem to be saying there is no basis for our sending these decisions back. Because anything else means that we're just fussing with the way they weighed the evidence and we can't do that. Well, I would say that the deferential review, the court is somewhat penned in, in that after Wilkinson, even the court in Figueroa makes clear that established facts are not reviewable. I guess I would reiterate my position that there is a role for the court to be a stopgap for situations where compelling evidence was missed or ignored, but the court should and must avoid re-weighing the evidence. Any other questions? Thank you, counsel. Thank you. Two-minute remodel. Thank you. I just want to follow up on a couple of things. First, we take the position the immigration judge actually did ignore certain fact-finding. The prospects of return, and my brother brought up the issue of perhaps the now 22-year-old son could petition for mom. Well, two issues there. At the time of the application, he was 16, and even if that is the case, I'm sure the court is aware and I can at least educate the court on the issue, a U.S. citizen petitioning for a parent who has no other qualifying relative that's eligible for a waiver, you're talking about at least 10 to 15 years before she could ever come back to the United States. So that's not a short-term or even a mid-term likelihood prospect of return. And at the time of the application, there was none. And she stated she had no other relatives that were able to petition for her. And the judge also ignored the support system factor that I mentioned before, who's going to support the children. She stated the father was not involved in their life. He saw them maybe once a month. And that was ignored in the judge's determination. Didn't she testify at one point that it was not clear whether the children would stay or not stay in the United States? That was her testimony. Well, the judge asked her that, and she stated in the record, the transcript, the children do not want to come, but in her affidavit she stated they wouldn't come. And in the application, specifically in the application, the 42B, stated the children would not come. So it's in the record that the children would not go to Guatemala, but they'd be left without a parent. So I think that's an issue that the judge overlooked or missed in her decision, because I think the judge was biased towards just denying this application. And I believe there could be ‑‑ I'm still struggling with this age issue. Sure. Because the date of birth of the children, that's part of the record. So at the point it goes before the IJ, they know that the kids have aged out. And so you're saying that it would be improper to consider that and that we should fix the time on the date of the application. And I'm just struggling with what ‑‑ Well, it's not about fixing just the date of the application. It's more that they should not be penalized, this applicant, due to the passage of time, the delay caused by the administrative agencies. The case was at the BIA for four years before we filed here. I believe the case was put in abeyance awaiting the determination of Wilkinson. So I think that those six years should not penalize the children in this case, and the case law establishes it. I do believe there is a ‑‑ there would be a situation on remand that a further fact opening up for further evidence because the judge missed it, there may be a possibility that that could be opened up for that, too. Thank you. Okay. Thank you, Counselor. That concludes arguments in this case.